IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHARON N.,[1]

            Plaintiff,                                         Civ. No. 1:18-cv-01991-CL

                           v.                                   **ORDER**

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

---

MARK D. CLARKE, Magistrate Judge.

      Plaintiff Sharon N. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration pursuant to 42 U.S.C. 405(g) and 1383(c)(3), denying her claim

for benefits.  For the reasons below, the Commissioner's decision is REVERSED and

REMANDED for immediate payment of benefits.

///

---

[1]In the interest of privacy, this Order uses only the first name and the initial of the last name of
the non-governmental party or parties in this case.

## BACKGROUND[2]

Plaintiff is a forty-nine-year-old woman who worked full-time as a United Parcel Service driver from 1997 until May 2014. Tr. 52, 186-89. In May 2014 Plaintiff experienced tingling and numbness in her hands and feet while driving her normal work route and went to the emergency room for treatment. Tr. 52, 338, 340. After Plaintiff's emergency room visit, she began treatment with Dr. Michael Presti, a neurologist, who diagnosed her with probable multiple sclerosis and prescribed Tecfidera. Tr. 302.

In October 2014, after Dr. Presti changed the focus of his practice, Plaintiff started treatment with a different neurologist, Dr. Larry Maukonen. Tr. 402. Dr. Maukonen treated Plaintiff from October 2014 until February 2017. Tr. 387-88, 390-91, 395-98, 564-84, 595, 714-35. During his treatment Dr. Maukonen increased Plaintiff's Tecfidera dosage, but this caused Plaintiff to experience two grand mal seizures, one on September 4, 2014 and a second one on December 26, 2014. Tr. 578. Dr. Maukonen adjusted her medication, but Plaintiff continued to report smaller seizure episodes. Tr. 66, 477, 543, 578.

Plaintiff experiences various physical and mental symptoms. During examinations Dr. Maukonen noted that Plaintiff experienced incoordination, fatigue, and numbness and weakness in her extremities, with her symptoms more pronounced on the left side. Tr. 387, 574, 716, 572, 718, 570, 720, 567, 725, 565, 727, 595, 728, 387, 578, 390, 397, 582, 397, 580, 395. Plaintiff also reported that she experienced pain and heat sensitivity. Tr. 63-64. Additionally, although Plaintiff had historically suffered from migraines, her migraines became more frequent and severe after the onset of multiple sclerosis. Tr. 67, 412-13, 415, 566, 570, 595, 720, 724, 728.

---

[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 10.

Plaintiff's mental symptoms include depression and difficulties with her memory. Tr. 62, 65, 390, 414-15, 452, 476, 513-14, 518, 566, 724.

In April 2015, Plaintiff lost her balance and fell out of a trailer. Tr. 407. During her fall she extended her left arm to catch herself and broke her left wrist. Tr. 407, 409.

On March 7, 2017 Dr. Maukonen referred Plaintiff to Dr. Dan-Andrei Dmitriu for continued treatment for her multiple sclerosis. Tr. 595, 728. Dr. Dmitriu examined Plaintiff once on June 27, 2017, and questioned Plaintiff's multiple sclerosis diagnosis finding that her symptoms were more indicative of panic attacks. Tr. 543-45. However, Dr. Dmitriu referred Plaintiff for additional testing to determine the cause of her symptoms. Tr. 543. Based on Plaintiff's reports of ongoing seizures Dr. Dmitriu also sent a mandatory impairment referral to the DMV to have her driver's license revoked. Tr. 281-82, 544.

## PROCEDURAL BACKGROUND

On August 24, 2014, Plaintiff protectively applied for Disability Insurance Benefits, alleging disability beginning May 28, 2014. Tr. 182-83. The agency denied the claim both initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 119-23, 130-32, 133-34. She appeared for a hearing before ALJ Mark Triplett on September 26, 2017. Tr. 46-85. On November 15, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. Tr. 12-30. Plaintiff requested review of the hearing decision, which the Appeals Council denied in September 2018. Tr. 1-11. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following

series of questions:

1.   Is the claimant performing "substantial gainful activity"? 20 C.F.R.
     § 404.1520(a)(4)(i). This activity is work involving significant mental or
     physical duties done or intended to be done for pay or profit. 20 C.F.R.
     § 404.1510. If the claimant is performing such work, she is not disabled
     within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the
     claimant is not performing substantial gainful activity, the analysis
     proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's
     regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in
     death, an impairment is "severe" if it significantly limits the claimant's
     physical or mental ability to do basic work activities. 20 C.F.R.
     § 404.1521(a). This impairment must have lasted or must be expected to
     last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If
     the claimant does not have a severe impairment, the analysis ends. 20
     C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the
     analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the
     impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
     then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the
     impairment does not meet or equal one or more of the listed impairments,
     the analysis proceeds to the "residual functional capacity" ("RFC")
     assessment.

     a.   The ALJ must evaluate medical and other relevant evidence to assess
          and determine the claimant's RFC. This is an assessment of work-
          related activities that the claimant may still perform on a regular and
          continuing basis, despite any limitations imposed by his or her
          impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c). After the
          ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v).  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1.  Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2020.

2.  Plaintiff did not engage in substantial gainful activity from the alleged onset date of May 28, 2014.

3.  Plaintiff has the following severe impairments: multiple sclerosis; cervical degenerative disc disease; left distal radius fracture; and major depressive disorder.

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5.  Plaintiff has the RFC to perform light work with the following limitations. The claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk for two out of eight hours and sit for six out of eight hours. She must have the opportunity to sit or stand at will while remaining on task. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot tolerate exposure to extreme heat or cold, or wetness or humidity. She cannot tolerate exposure to workplace hazards such as unprotected heights and exposed moving machinery. She can perform simple, routine tasks.

6.  Plaintiff is unable to perform any past relevant work.

7.  Plaintiff was born on August 27, 1968, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  Plaintiff has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not an issue because material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42

U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript

record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or

without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues:

1.  Did the ALJ properly evaluate the opinions of Plaintiff's medical sources?

2.  Did the ALJ properly evaluate Plaintiff's subjective pain testimony?

3.  Did the ALJ properly evaluate Plaintiff's ability to complete other work in the

    national economy at step five?

The Court finds that the ALJ erred in all three issues, and for the reasons below, the case

is reversed and remanded for immediate payment of benefits.

### I.      The ALJ improperly evaluated the medical opinion of Dr. Larry Maukonen.

In social security cases, there are three categories of medical opinions: those that come

from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195,

1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an

examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more

authority than those that are not, as are opinions of specialists directly relating to their

specialties. *Id.* However, an ALJ considers all relevant medical evidence and is responsible for

resolving its conflicts. 20 C.F.R. § 404.1527; *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d

1155, 1164 (9th Cir. 2008). Even where an examining physician's opinion is contradicted by

another doctor, the ALJ may only reject it with "specific and legitimate" reasons supported by

substantial evidence. *Id.* at 1164; *accord Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Here, when evaluating Plaintiff's physical symptoms and limitations, the ALJ weighed

the medical opinions of Plaintiff's treating neurologist, Dr. Larry Maukonen, consultative

examiner Dr. Michael Henderson, and the state agency medical consultants. Tr. 21-23. The ALJ

reviewed Dr. Maukonen's two Residual Functional Capacity questionnaires from January 2015

and May 2017. Tr. 22. Plaintiff contends the ALJ improperly discredited the medical opinion of

Dr. Maukonen. The Court agrees.

In both Dr. Maukonen's RFC questionnaires he noted Plaintiff's multiple sclerosis

diagnosis and wrote that Plaintiff experienced ataxia, weakness, fatigue, poor coordination,

paresthesias, and other emotional disturbances. Tr. 392, 603. In his January 20, 2015

questionnaire he limited Plaintiff to standing 15 minutes at a time, and that she could stand 2

hours total in an 8-hour workday. Tr. 393. He also limited Plaintiff to sitting for 30 minutes at a

time, and that she could sit 4 hours total in an 8-hour workday. Tr. 393. He found Plaintiff could

lift 10 pounds occasionally and could perform fine and gross manipulation occasionally with her

right hand, however she could never perform fine and gross manipulation with her left hand. Tr.

393. She could occasionally bend, could never stoop, and was never to work around dangerous

equipment or operate a motor vehicle. Tr. 393. She could never tolerate heat, could occasionally

tolerate cold, and could frequently tolerate dust, smoke, fumes, and noise. Tr. 393. Overall, Dr.

Maukonen found that Plaintiff was "unable to work at all – since May 27, 2014." Tr. 394.

In his May 2, 2017 questionnaire, Dr. Maukonen's findings were similar. Dr. Maukonen

wrote that Plaintiff's diagnosis included multiple sclerosis and now included migraines. Tr. 603.

Dr. Maukonen wrote that Plaintiff sustained disturbance of gait and station and was unable to

ambulate properly. Tr. 603. He did not report specific findings regarding Plaintiff's ability to

stand, but further limited her to sitting for 15 minutes at a time, and that she could sit for a total

of 4 hours in an 8-hour workday. Tr. 604.  Again, he wrote that she could never stoop, bend,

balance, tolerate heat, or operate dangerous equipment. Tr. 604.  She could occasionally perform

fine and gross manipulation with her right hand, could occasionally perform gross manipulation

with her left hand, but could never perform fine manipulation with her left hand. Tr. 604. She

could occasionally operate a motor vehicle, and could occasionally tolerate cold, dust, smoke,

fumes, and noise exposure. Tr. 604.  Finally, he wrote that Plaintiff would need to take

"unscheduled breaks" during the workday, would need to lay down because of severe headaches

or vertigo, and on average would miss more than four days of work per month. Tr. 605.

 The ALJ discredited Dr. Maukonen's medical opinion expressed in these questionnaires

writing that, "[w]hile the need for exertional, postural, and environmental restrictions is

consistent with the record as a whole, the extreme degree of limitation described by Dr.

Maukonen is not." Tr. 22.  In support of his finding, the ALJ wrote the following:

> [Dr. Maukonen] does not explain what else the claimant would be doing outside the
> limited sitting and standing.  Inability to lift even 10 pounds more than occasionally is
> inconsistent with her stated abilities at home and in the community (Ex. 5E).  She did not
> report limitations in lifting, reaching, or using her hands (Id.)  Finally, the most recent
> examinations have had little to no objective findings and evidence of inconsistencies (Ex.
> 18F; 12F).
>
> Tr. 22.

 Plaintiff argues that the ALJ erred when evaluating Dr. Maukonen's medical opinion,

noting that the ALJ failed to properly consider "the length, frequency and nature of Dr.

Maukonen's treatment history with Plaintiff" and his "specialty in neurology." Pl.'s Br. 11-12,

citing 20 C.F.R. 404.1527(c)(2)-(6); *Trevizo v. Berryhill*, 862 F.3d 987, 998 (9th Cir. 2017).

Additionally, Plaintiff argues that the four reasons the ALJ identified to reject Dr. Maukonen's

medical opinion were not specific and legitimate reasons supported by the record.  The Court

agrees.

"The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo*, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)). If a treating source is not given controlling weight, the ALJ will consider such factors as the length, frequency, nature and extent of the treatment relationship, and the supportability, consistency, and specialization of the treating providers medical opinion. *See* 20 C.F.R. §§ 1527(c)(2)(i); (2)(ii); (3)-(6). The regulations do not require the ALJ to specifically discuss the factors, but only to consider them. *Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. 2018); *see also* 20 C.F.R. § 404.1527(c).

Here although the ALJ noted the § 404.1527(c) factors there is no indication that the ALJ properly considered them when evaluating Dr. Maukonen's medical opinion. Tr. 22. Indeed, instead of acknowledging Dr. Maukonen's lengthy and continuous treatment of Plaintiff, the ALJ discredited Dr. Maukonen's medical opinion and cited one-time examinations from Dr. Henderson and Dr. Dan-Andrei Dmitriu from April 25, 2017 and June 27, 2017, respectively, to show "little to no objective findings" and "evidence of inconsistencies" in Plaintiff's symptoms. Tr. 22, citing 12F and 18F. The ALJ fails to explain why these one-time examinations should be given more weight than the years of treatment Plaintiff received from Dr. Maukonen. *See* Tr. 22. Additionally, despite the inconsistencies the ALJ notes, Dr. Henderson's and Dr. Dmitriu's examinations support Dr. Maukonen's findings. For example, Dr. Henderson's treatment notes document that Plaintiff experienced "numbness and tingling in all 4 extremities, with the left side being worse." Tr. 476-77. Additionally, although Dr. Dmitriu was unsure if Plaintiff suffers from multiple sclerosis he still noted "slight imbalance with tandem walking" and that Plaintiff was "[p]ositive for weakness and malaise/fatigue," and "[p]ositive for ... loss of balance,

numbness, paresthesias, seizures, and vertigo." Tr. 546-47. Additionally, Dr. Dmitriu referred

Plaintiff to a multiple sclerosis specialist to perform further testing regarding her symptoms. Tr.

543. Overall, the ALJ fails to explain why the one-time examinations of Dr. Henderson and Dr.

Dmitriu contradict over two years of treatment notes and findings from Dr. Maukonen.

Therefore, the ALJ improperly discredited Dr. Maukonen's medical opinion.

Additionally, the remaining reasons the ALJ relies on to discredit Dr. Maukonen's

medical opinion are not specific and legitimate reasons supported by substantial evidence. First,

the ALJ wrote that Dr. Maukonen "did not explain what else the claimant would be doing

outside the limited sitting and standing." Tr. 22. Plaintiff argues the ALJ was never asked to

opine on this, and thus this was not a specific and legitimate reason for the ALJ to discredit Dr.

Maukonen's medical opinion. Indeed, neither questionnaire asked for further information

regarding Plaintiff's activities outside of sitting and standing, so Dr. Maukonen's failure to

discuss that is not a specific and legitimate reason to discredit his medical opinion. *See* Tr. 392-

94, 603-05.

Next, the ALJ discredited Dr. Maukonen's medical opinion that Plaintiff was unable "to

lift even 10 pounds more than occasionally" because it was "inconsistent with [Plaintiff's] stated

abilities at home and in the community." Tr. 22. Inconsistency between a treating provider's

opinion and a claimant's daily activities may constitute a specific and legitimate reason to

discount that provider's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014), citing

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999). However, the

ALJ failed to explain why Plaintiff's activities were inconsistent with Dr. Maukonen's opinion.

Indeed, although Plaintiff wrote that she performs personal care, makes simple meals, goes

shopping, and attends her son's football or baseball games, it is unclear why these activities are

inconsistent with a finding that she cannot lift 10 pounds more than occasionally. *See* Tr. 227-29.

Additionally, Plaintiff testified that her mother helps her with groceries, cooking, and cleaning,

so it is unclear whether Plaintiff performs any lifting. *See* Tr. 59.  Therefore, this is not a specific

and legitimate reason to discredit Dr. Maukonen's opinion regarding Plaintiff's ability to lift.

Third, the ALJ discredited Dr. Maukonen's medical opinion after finding that Plaintiff

"did not report limitations in lifting, reaching, or using her hands." Tr. 22, citing Exhibit 5E.

Exhibit 5E is Plaintiff's Adult Function Report, dated October 27, 2014. *See* Tr. 225-32.

Although the ALJ correctly notes that Plaintiff did not discuss specific limitations in "lifting,

reaching, or using her hands" in this function report, the ALJ fails to explain why this lack of

reporting is a specific and legitimate reason to reject Dr. Maukonen's medical opinion.  In fact,

Dr. Maukonen's medical treatment of Plaintiff from October 2014 through April 2017

consistently document Plaintiff exhibiting clumsiness in her extremities that was greater on her

left than right. *See* Tr. 387, 390, 395, 397, 565, 567, 570, 572, 574, 578, 580, 582, 595, 716, 718,

720, 725, 727-28.  Additionally, other medical providers noted the weakness in Plaintiff's hands,

and Plaintiff testified to randomly dropping things because of weakness in her hands. *See* Tr. 63,

345, 537. The ALJ's finding is not supported by the record.

Finally, as discussed above, the treatment notes the ALJ cites for "evidence of

inconsistencies" are not fully supported by the record.

Therefore, the ALJ failed to properly evaluate the medical opinion of Plaintiff's treating

neurologist Dr. Maukonen.  This was harmful error.

**II.**    **The ALJ improperly evaluated Plaintiff's subjective complaints in part.**

When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective

medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8. The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.* The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and support by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Holohan*, 246 F.3d at 1208; *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ must also "state specifically which symptom testimony" is being rejected and what facts lead to that conclusion. *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 2009) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). In rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter*, 504 F.3d at 1036).

In this case, the ALJ applied the requisite two-step framework, but failed to cite specific, clear, and convincing reasons for discounting portions of Plaintiff's subjective symptom testimony. Plaintiff alleges she cannot work due to symptoms related to multiple sclerosis,

including dizziness, fatigue, migraines, numbness in her hands and feet, weakness, depression, and periods of loss of awareness.

In evaluating these symptoms, the ALJ determined that the medically determinable impairments could reasonably cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms "are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. Specifically, the ALJ found Plaintiff's statements were inconsistent with objective medical examinations which "varied widely." Tr. 21. Additionally, the ALJ found that Plaintiff's condition improved with treatment and her activities of daily living are inconsistent with her allegations. Tr. 21. Although the ALJ properly discredits Plaintiff's testimony regarding her balance, the ALJ failed to properly discredit Plaintiff's remaining symptom testimony. The Court describes the ALJ's analysis in turn.

First, the ALJ found Plaintiff's symptoms were inconsistent with the objective medical records noting that the medical examinations have "varied widely." Tr. 21. The ALJ noted imaging showed no "new lesions" related to Plaintiff's multiple sclerosis, and that Plaintiff's numbness and tingling "quickly improved." Tr. 21. Conflict between the alleged severity of a claimant's symptom testimony and the medical evidence of record is a valid basis for an ALJ to find the claimant's symptom testimony less than fully credible. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). However, as noted above, Plaintiff's numbness and tingling did not improve, as Dr. Maukonen continued to note numbness and tingling, and the medical opinion that the ALJ cites as being inconsistent with Plaintiff's subjective symptom testimony, specifically the opinion of Dr. Henderson, still shows Plaintiff experienced numbness in her hands and feet. *See* Tr. 476-77. These inconsistencies are not supported by the record.

Second, the ALJ determined Plaintiff's vertigo and unstable gait were improved through physical therapy. Tr. 21. An ALJ may discount a claimant's testimony based on effective treatment. *See Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir. 2016). Indeed, after starting physical therapy in January 2017, Plaintiff was discharged on March 9, 2017 after meeting her goals, with the physical therapy note showing Plaintiff reported her "balance is a great deal better" and that she could "walk in all directions with head movements," could "traverse an obstacle course with no LOB (uneven ground)," could "negotiate a flight of stairs with no railing" and could "reach up to a high shelf with no LOB" (loss of balance). Tr. 607, 633. Therefore, this was a specific, clear and convincing reason to reject Plaintiff's subjective symptom testimony regarding her vertigo and unstable gait.

Finally, the ALJ determined that Plaintiff's activities were inconsistent with her allegations of disability. Tr. 21. The Court agrees with Plaintiff that the ALJ both failed to describe a specific inconsistency between Plaintiff's activities of daily living and her reports, and failed to identify what activities involve physical functions that are transferable to a work setting. An ALJ may use a claimant's activities of daily living to determine symptom allegation credibility in order to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ determined that, "[d]espite [multiple sclerosis] symptoms [Plaintiff] reported staying active in attending her son's sporting events, shopping several times a week, managing household chores, and helping out with the family's dairy." Tr. 21. The ALJ provided no other discussion regarding Plaintiff's activities of daily living. Although Plaintiff performs activities of daily living it is unclear why these are inconsistent with her testimony. Plaintiff testified that her mother comes over to help complete household chores, which was

confirmed in the Third Party Function Report completed by her mother. *See* Tr. 59, 241.

Additionally, the ALJ provided no explanation for what transferable skills Plaintiff's activities

represent that were transferable to a work setting. "One does not need to be utterly incapacitated

or sit in bed all day in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir.

2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)). Further, the Ninth Circuit has

explained that:

> The critical differences between activities of daily living and
> activities in a fulltime job are that a person has more flexibility in
> scheduling the former than the latter, can get help from other
> persons . . ., and is not held to a minimum standard of
> performance, as she would be by an employer. The failure to
> recognize these differences is a recurrent, and deplorable, feature
> of opinions by administrative law judges in social security
> disability cases.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (quoting *Bjornson v. Astrue*, 671

F.3d 640, 647 (7th Cir. 2012)). Therefore, Plaintiff's participation in activities of daily living

was not a clear and convincing reason to reject her subjective symptom testimony.

The ALJ reasonably rejected Plaintiff's subjective symptom testimony regarding the

severity of her unstable gait, yet the ALJ failed to reject Plaintiff's subjective symptom

testimony regarding the rest of her symptoms, including the numbness and tingling in her hands,

her migraines, and continued weakness.

**III.     The ALJ improperly identified jobs Plaintiff could perform in the national
economy at Step Five.**

The RFC reflects the most an individual can do. 20 C.F.R. § 404.1545. In formulating

an RFC, the ALJ must consider all medically determinable impairments, including those that are

not "severe," and evaluate "all of the relevant medical and other evidence," including the

claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL 374184. An ALJ may rely on the

testimony of a VE to determine whether a claimant retains the ability to perform past relevant

work at step four, or other work in the national or regional economy at step five. *Osenbrock v.*

*Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The ALJ is required to include only those

limitations that are supported by substantial evidence in the hypothetical posed to a VE. *See id.*

at 1163-65. "Conversely, an ALJ is not free to disregard properly supported limitations."

*Robbins*, 466 F.3d at 886. In other words, limitations supported by substantial evidence must be

incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the

VE. *Osenbrock*, 240 F.3d at 1163-65.

Plaintiff asserts that the ALJ's step five finding is not supported by substantial evidence

because the RFC and hypothetical posed to the VE failed to include all of Plaintiff's limitations.

The Court agrees.[3] Here, the ALJ improperly rejected the medical opinion evidence of Dr.

Maukonen and improperly rejected parts of Plaintiff's subjective symptom testimony. By failing

to properly credit these opinions, the ALJ failed to incorporate all of Plaintiff's limitations into

the RFC and, by extension, the dispositive hypothetical question posed to the VE. Therefore, the

ALJ's conclusion regarding the jobs Plaintiff can perform lacks evidentiary support. *Robbins*,

466 F.3d at 886; *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational

expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony

has no evidentiary value to support a finding that the claimant can perform jobs in the national

economy.") (internal citation omitted).

## REMAND

---

[3] Plaintiff also made arguments rejecting the specific jobs the ALJ found Plaintiff could perform
in the national economy, particularly the positions of tanning salon attendant, laundry folder, and
garment sorter. As the ALJ erred when evaluating Plaintiff's subjective symptom testimony and
the medical opinion evidence, the Court need not address these issues as the RFC on which they
were based is flawed.

Within a court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand

for further proceedings or for an award of benefits." *Holohan,* 246 F.3d at 1210 (citation omitted).

Although a court should generally remand to the agency for additional investigation or explanation, a

court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec.*

*Admin.,* 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further

proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis

on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under

the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.,* 635 F.3d 1135, 1138 (9th Cir.

2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding. *Garrison,* 759

F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the

record as a whole to determine whether the record is fully developed, the record is free from conflicts

and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin,* 808

F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no

outstanding issues left to be resolved does the district court consider whether the ALJ would be

required to find the claimant disabled on remand if the improperly discredited evidence were credited

as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.*

The district court retains flexibility, however, and is not required to credit statements as true because

the ALJ made a legal error. *Id.* at 408.

Here, the ALJ erred by improperly discounting the medical opinion of Dr. Maukonen and

parts of Plaintiff's subjective symptom testimony. Dr. Maukonen's medical opinion and Plaintiff's

subjective symptom testimony are consistent with each other and are consistent with the record as a

whole. As noted above, even the medical opinions that the ALJ cited as inconsistent, particularly

those opinions of Dr. Henderson and Dr. Dmitriu, are in fact consistent with Dr. Maukonen's opinion

and Plaintiff's testimony. Therefore, the Court cannot discern any other conflicts or ambiguities in the record and does not see any useful purpose in further proceedings.

When presented with hypothetical restrictions consistent with the evaluations of Dr. Maukonen, such as Plaintiff's absences due to migraines, the Vocational Expert testified that, "regardless of the condition or reason, [missing] two or more days [of work] is not going to be tolerated by an employer over time per month." Tr. 80. Additionally, the VE testified that limitations in a claimant's use of both of her hands would "be problematic to maintain employment." Tr. 80. The record has been fully developed and there are no outstanding issues to be resolved. The Court finds that the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence, as discussed above, were credited as true.

## ORDER

Based on the foregoing, the decision of the Commissioner is REVERSED and REMANDED for an immediate payment of benefits.

It is so ORDERED and DATED this 10th day of June, 2020.

/s/ Mark D. Clarke
MARK D. CLARKE
United States Magistrate Judge